**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| MONOLITHIC POWER SYSTEMS, INC.; and CHENGDU MONOLITHIC POWER SYSTEMS CO., LTD., | § § § § | |
| Plaintiffs, | § § | Civil Action No. 6:20-cv-00876-ADA |
| v. | § § § | Jury Trial Demanded |
| MERAKI INTEGRATED CIRCUIT (SHENZHEN) TECHNOLOGY, LTD.; PROMATE ELECTRONIC CO., LTD.; QINGMI (BEIJING) TECHNOLOGY CO., LTD.; SHENZHEN TIMES INNOVATION TECHNOLOGY CO. LTD.; and BASEUS ACCESSORIES LLC, | § § § § § § § § § | |
| Defendants. | § § | |
| MERAKI INTEGRATED CIRCUIT (SHENZHEN) TECHNOLOGY, LTD., | § § § | |
| Counterclaim-Plaintiff, | § § | |
| MONOLITHIC POWER SYSTEMS, INC.; and CHENGDU MONOLITHIC POWER SYSTEMS CO., LTD., | § § § § | |
| Counterclaim-Defendants. | § § | |

**DEFENDANT MERAKI'S ANSWERS, DEFENSES, AND**
**COUNTERCLAIMS TO MPS'S THIRD AMENDED COMPLAINT**

Defendant Meraki Integrated Circuit (Shenzhen) Technology, Ltd. ("Meraki"), by and

through its undersigned counsel, hereby Answers and responds to the Third Amended Complaint

(ECF 96) ("Third Amended Complaint") filed by Plaintiffs Monolithic Power Systems, Inc. and

Chengdu Monolithic Power Systems Co., Ltd. (collectively, "MPS"), as follows. For the sake of

convenience, Meraki incorporates the headings appearing in the Third Amended Complaint. Meraki does not admit any allegation made in, or inference suggested by, such headings, and specifically denies the same. Meraki denies all allegations in the Third Amended Complaint that are not expressly admitted below. Meraki denies that MPS is entitled to the requested relief or any relief.

## NATURE OF THE ACTION

1.      Meraki admits that this is a civil action that purports to allege claims for damages and injunctive relief under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*., for the alleged infringement of United States Patent Nos. 8,400,790 ("the '790 Patent") and 10,432,104 ("the '104 Patent") (collectively, the "Asserted Patents"). Meraki further admits that Exhibits A and B purport to be certified copies of the Asserted Patents.

2.      Meraki admits that this is a civil action that purports to allege claims for damages and injunctive relief for alleged trade secret misappropriation, tortious interference, and unfair competition.

## INTRODUCTION

3.      Meraki denies the allegations in Paragraph 3.

4.      Meraki lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 4, and therefore denies the same.

5.      Meraki admits that some of Meraki's products are synchronous rectifier products, but denies that Meraki competes directly against MPS for customers. Meraki denies that any of Meraki's products are pin-to-pin compatible with MPS's products. Meraki denies the remaining allegations in Paragraph 5.

6.      Meraki admits that it was founded by Mr. Wei Dong ("Mr. Dong") and Ms. Lin Sheng ("Ms. Sheng") in April 2017. Meraki admits that MPS employed Mr. Dong and Ms. Sheng prior to their formation of Meraki. Meraki denies that Mr. Dong and Ms. Sheng founded Meraki only two weeks after they left MPS. To the extent that the remaining allegations of Paragraph 6 are outside of Meraki's knowledge, Meraki denies such allegations. Meraki otherwise denies the remaining allegations of Paragraph 6.

7.      Meraki admits that Mr. Dong and Ms. Sheng signed confidentiality agreements with MPS. Meraki lacks knowledge or information sufficient to form a belief regarding the truth whether all employees of MPS are required to sign confidentiality agreements and, on that basis, denies the same. Meraki further admits that Exhibit C, on its face, purports to be a copy of the confidential agreement signed by Mr. Dong, which recites "at all times during [his] employment and thereafter, to hold in strictest confidence, and not to use, reproduce or copy, except for the benefit of [MPS], or to disclose to any person, firm or corporation without written authorization of the Board of Directors of [MPS], any Confidential Information of [MPS] . . ." Meraki denies the remaining allegations of Paragraph 7.

8.      Meraki denies that Mr. Dong and Ms. Sheng ever stole MPS's alleged trade secrets. Meraki further denies the remaining allegations of Paragraph 8.

9.      Meraki admits that Ms. Sheng prepared one or more cost-competitive analyses of semiconductor products based on publicly-available datasheets and product information prior to her employment by MPS. To the extent that Paragraph 9 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 9. Meraki otherwise denies the remaining allegations of Paragraph 9 including that "Mr. Dong and Ms. Sheng were planning all along to form their own competing company using MPS's trade secrets."

3

10.     Meraki admits that Mr. Dong and Ms. Sheng worked at Meraki. Meraki further admits that Meraki was formed in China. Meraki denies that Mr. Dong and Ms. Sheng took steps to start Meraki while employed by MPS. Meraki further denies that Meraki directly competes against MPS and that Meraki sells the exact same products or to the exact same customers as MPS. To the extent that Paragraph 10 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 10. Meraki otherwise denies the remaining allegations of Paragraph 10, including that "Ms. Sheng even lied to MPS when she resigned by stating she was going 'to work on something complete [sic] different at a local IC start-up company.'"

11.     Meraki admits that Mr. Dong and Ms. Sheng had access to certain confidential information of MPS while they were employed by MPS, but denies that Mr. Dong and Ms. Sheng had access to MPS's trade secrets related to the design and layout of its synchronous rectifier products. To the extent that Paragraph 11 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 11. Meraki otherwise denies the remaining allegations of Paragraph 11.

12.     To the extent that MPS refers to "their mothers" as identifying Mr. Dong's mother and Ms. Sheng's mother, Meraki admits that Meraki was registered under the names of their mothers, but such arrangement was only for expediting the company registration process in China. Meraki denies that Ms. Dong and Ms. Sheng formed Meraki under their mothers' names to "cover their tracks and avoid associating their names directly with Meraki's business registration." Meraki further denies that Mr. Dong and Ms. Sheng were negotiating with potential investors in Meraki while still employed at MPS. Meraki denies the remaining allegations in Paragraph 12.

13.     Meraki admits that Meraki has started marketing and selling synchronous rectifier products, including the MK1808, MK91808, MK1718, MK91718, MK1708, MK1715, MK1716,

MK17350, MK17360, MK91735, MK91736, MK91738, MK1705A, MK1706, and MK1709 products. Meraki denies that any of its products are pin-for-pin compatible with MPS's MP6908 product or any other MPS product. Meraki denies that it has released products identified by the model numbers MK1719, MK1807, or MK91807. Meraki denies the remaining allegations in Paragraph 13.

14.     Meraki denies that its synchronous rectifier products incorporate alleged trade secrets about the design and layout of MPS's synchronous rectifier products, that Mr. Dong and Ms. Sheng could only have learned those alleged trade secrets through their employment with MPS, and that Mr. Dong and Ms. Sheng violated the confidentiality agreements that they signed with MPS. Meraki denies the remaining allegations of Paragraph 14.

15.     Meraki denies the allegations in Paragraph 15. The Court granted Meraki's Motion to Dismiss MPS's claims for induced infringement alleged in the First Amended Complaint. *See* ECF 54.

16.     Meraki denies the allegations in Paragraph 16. The Court granted Meraki's Motion to Dismiss MPS's claims of contributory infringement alleged in the First Amended Complaint. *See* ECF 54.

17.     Meraki denies the allegations in Paragraph 17.

18.     Meraki admits that MPS seeks the relief requested in Paragraph 18, but denies that MPS is entitled to any such relief. The Court granted Meraki's Motion to Dismiss MPS's claims for willful infringement alleged in the First Amended Complaint. *See* ECF 54.

## PARTIES

19.     Meraki admits that Monolithic Power Systems, Inc. is a plaintiff in this action. Meraki lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 19, and therefore denies the same.

20.     Meraki admits that Chengdu Monolithic Power Systems Co., Ltd. is a plaintiff in this action. Meraki lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 20, and therefore denies the same.

21.     Meraki admits that Meraki is a corporation organized and existing under the laws of the People's Republic of China, with a principal place of business at 16E, Shenzhen Free Trade Center, 111 Taizi Road, Shekou, Nanshan District, Shenzhen. Meraki denies that Meraki's principal place of business is located at 7C, 7th Floor, Shenzhen Free Trade Center, 111 Taizi Road, Shekou, Nanshan District, Shenzhen.

22.     Meraki admits that Promate Electronic Co., Ltd. was a defendant in this action. Meraki lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 22, and therefore denies the same.

23.     Meraki admits that QingMi (Beijing) Technology Co., Ltd. is named as a defendant in the Third Amended Complaint. Meraki lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 23, and therefore denies the same.

24.     Meraki admits that Shenzhen Times Innovation Technology Co. Ltd. is named as a defendant in the Third Amended Complaint. Meraki lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 24, and therefore denies the same.

25.     Meraki admits that Baseus Accessories LLC is named as a defendant in the Third Amended Complaint. Meraki lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 25, and therefore denies the same.

## JURISDICTION AND VENUE

26.     Meraki admits that this action purports to allege claims for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. § 271. Meraki denies the remaining allegations, if any, in Paragraph 26.

27.     Meraki admits that this action purports to allege claims for trade secret misappropriation under the Defend Trade Secrets Act under Title 18 of the United States Code, including 18 U.S.C. § 1836. Meraki denies the remaining allegations, if any, in Paragraph 27.

28.     Meraki admits that this action purports to include state law claims for trade secret misappropriation, tortious interference, and unfair competition.

29.     Meraki admits that the Court has subject matter jurisdiction and supplemental jurisdiction over the action.

30.     Meraki denies the allegation in Paragraph 30. The Court granted Meraki's motion to dismiss MPS's claims for contributory and induced infringement alleged in the First Amended Complaint.

31.     Meraki denies that it directly ships to, offers for sale, sells, or uses any Accused Products in the United States, much less in this forum. Meraki admits that Promate Shenzhen made a one-time shipment of free product samples to Texas in response to the pre-textual order placed by Sawblade Ventures, LLC. Meraki admits that some USB power strips manufactured by QingMi and USB wall chargers manufactured by Baseus incorporate some of the Accused Products but denies that it has the knowledge or intent that such end products will be shipped to, offered for

sale, sold, or used in this forum and throughout the United States. To the extent that Paragraph 31 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations. Meraki otherwise denies the remaining allegations in Paragraph 31.

32.     Meraki denies that it created products with allegedly stolen MPS trade secrets. Meraki denies the remaining allegation in Paragraph 32.

33.     Meraki admits that Meraki, QingMi, and Shenzhen Times are foreign entities. Meraki denies the remaining allegations in Paragraph 30.

## THE ASSERTED PATENTS

34.     Meraki incorporates by reference its responses to Paragraphs 1-33 as if fully set forth herein.

35.     Meraki admits that United States Patent No. 8,400,790 ("the '790 Patent") on its face states that its title is "Latch-off of real time synchronous rectification for light load control" and it was issued on March 19, 2013. Meraki further admits that Exhibit A on its face purports to be a copy of the '790 Patent. Meraki lacks sufficient knowledge or information to admit or deny any remaining allegations in Paragraph 35, and therefore denies the same.

36.     Meraki admits that United States Patent No. 10,432,104 ("the '104 Patent") on its face states that its title is "Control circuit for synchronous rectifier and the method thereof" and it was issued on October 1, 2019. Meraki further admits that Exhibit B on its face purports to be a copy of the '104 Patent. Meraki lacks sufficient knowledge or information to admit or deny any remaining allegations in Paragraph 36, and therefore denies the same.

## GENERAL ALLEGATIONS

**MPS Overview**

37.     Meraki incorporates by reference its responses to Paragraphs 1-36 as if set forth fully here.

38.     Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 38 and, on that basis, denies the same.

39.     Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 39 and, on that basis, denies the same.

40.     Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 40 and, on that basis, denies the same.

41.     Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 41 and, on that basis, denies the same.

**MPS's Alleged Protection of Its Confidential Information**

42.     Meraki admits that Mr. Dong and Ms. Sheng each signed a confidentiality agreement with MPS when they joined MPS. Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations of Paragraph 42 and, on that basis, denies the same.

43.     Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 43 and, on that basis, denies the same.

44.     Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 44 and, on that basis, denies the same.

45.     Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 45 and, on that basis, denies the same.

**MPS's Employment of Mr. Dong in February 2016**

46.     Meraki admits the allegations of Paragraph 46.

47.     Meraki admits that Mr. Dong was employed by MPS, that he accepted MPS's employment offer to serve as a Marketing Director for MPS's AC/DC product line on January 8, 2016, and that his first date of employment with MPS was on February 16, 2016. To the extent that Paragraph 47 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 47. Meraki otherwise denies the remaining allegations of Paragraph 47, including that "Mr. Dong oddly requested that MPS postpone a new employee announcement for almost two months, until February 22, for personal reasons."

48.     Meraki admits that Mr. Dong signed a Confidential Information and Invention Assignment Agreement ("Dong NDA") with MPS on February 15, 2016, and further admits that Exhibit C, on its face, purports to be a copy of the Dong NDA, which recites "at all times during [his] employment and thereafter, to hold in strictest confidence, and not to use, reproduce or copy, except for the benefit of [MPS], or to disclose to any person, firm or corporation without written authorization of the Board of Directors of [MPS], any Confidential Information of [MPS] . . ." To the extent that Paragraph 48 makes allegations that are outside of Meraki's knowledge, Meraki denies the remaining allegations of Paragraph 48.

49.     Meraki admits that Section 1.1 of the Dong Agreement includes the language that "[he] also agree[s] not to keep, access, transmit, store, transfer, email, or otherwise maintain any Confidential Information of [MPS] . . . "

50.     Meraki admits that Mr. Dong has a Ph.D. in electrical engineering and that Mr. Dong worked at MPS as a Marketing Director for MPS's AC/DC product line. Meraki admits that Mr. Dong had access to certain confidential information of MPS while employed by MPS. To the

extent that Paragraph 50 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 50. Meraki otherwise denies the remaining allegations of Paragraph 50.

**Mr. Dong Allegedly Urges MPS to Hire Ms. Sheng**

51.     To the extent that Paragraph 51 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 51. Meraki otherwise denies the remaining allegations of Paragraph 51.

52.     Meraki admits that Mr. Dong and Ms. Sheng were employed by MPS, that Mr. Dong interviewed Ms. Sheng at the time of her hiring, and that Ms. Sheng reported to Mr. Dong following her hiring. Meraki admits that the resumes of both Mr. Dong and Ms. Sheng disclose that they worked at Texas Instruments and that the dates of their employment by Texas Instruments overlap, but denies that they hid their prior work relationship from MPS. To the extent that some allegations of Paragraph 52 are outside of Meraki's knowledge, Meraki denies such allegations of Paragraph 52. Meraki otherwise denies the remaining allegations of Paragraph 52, including that "Mr. Dong created the position of Staff Architect in the Product Line department for Ms. Sheng to apply to, in order to ensure that she could be hired by MPS and would report to him," and that "Mr. Dong was very involved in setting up Ms. Sheng's interview schedules and the persons she would be interviewing with," and "Mr. Dong was personally pushing MPS to hire Ms. Sheng."

**MPS Employment of Ms. Sheng in June 2016**

53.     Meraki admits that Mr. Sheng was employed by MPS and that she accepted MPS employment offer on May 27, 2016. To the extent that Paragraph 53 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 53. Meraki otherwise denies the remaining allegations of Paragraph 53.

54.     Meraki admits that Ms. Sheng was employed by MPS, that her first date of employment with MPS was on June 6, 2016, and that she executed MPS's Confidential Information and Invention Assignment Agreement ("Sheng NDA"). Meraki further admits that Exhibit D, on its face, purports to be a copy of the Sheng NDA. To the extent that Paragraph 54 makes allegations that are outside of Meraki's knowledge, Meraki denies the remaining allegations of Paragraph 54.

55.     Meraki admits that Ms. Sheng worked from North Carolina during her entire employment with MPS. To the extent that Paragraph 55 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 55. Meraki otherwise denies the remaining allegations of Paragraph 55, including that "Ms. Sheng never intended to move to California and work at MPS's San Jose office, as she knew her tenure as an employee of MPS would be short-lived."

**Mr. Dong and Ms. Sheng Allegedly Demanded Additional Access to MPS Trade Secrets**

56.     Meraki admits that Ms. Sheng prepared one or more cost-competitive analyses of semiconductor products based on publicly-available datasheets and production information prior to her employment by MPS. To the extent that Paragraph 56 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 56. Meraki otherwise denies the remaining allegations of Paragraph 56, including that "Ms. Sheng's job application with MPS was a premeditated and deliberate effort by Mr. Dong and Ms. Sheng to target MPS for its confidential information."

57.     Meraki admits that Mr. Dong and Ms. Sheng had access to certain confidential information of MPS while employed by MPS. To the extent that Paragraph 57 makes allegations

that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 57. Meraki otherwise denies the remaining allegations of Paragraph 57.

58.     Meraki admits that Ms. Sheng worked on the MP6908 product. To the extent that Paragraph 58 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 58. Meraki otherwise denies the remaining allegations of Paragraph 58, including that "Ms. Sheng targeted these products before ever joining MPS."

59.     Meraki admits that Ms. Sheng worked on the MP6908 product. To the extent that Paragraph 59 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 59. Meraki otherwise denies the remaining allegations of Paragraph 59, including that "Ms. Sheng [was given] access to the MP6908's highly confidential circuit diagram" and that "Ms. Sheng asked to see trade secret cross-sectional device structures, electrical design properties, and manufacturing processes in ViewWise."

**Ms. Sheng Announces Her Abrupt Resignation After Seven Months**

60.     Meraki admits that Ms. Sheng submitted her resignation to MPS in January 2017 and returned her work laptop to MPS. To the extent that Paragraph 60 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 60. Meraki otherwise denies the remaining allegations of Paragraph 60.

61.     Meraki admits that, following her resignation, MPS put Ms. Sheng on an unpaid leave of absence in February 2017. Meraki denies that Ms. Sheng maintained access to MPS design documents during her leave of absence because she had returned her work laptop to MPS before the leave of absence. To the extent that Paragraph 61 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 61. Meraki otherwise denies the remaining allegations of Paragraph 61.

**Mr. Dong's Alleged Abrupt Departure from MPS in March 2017**

62.     Meraki admits that Mr. Dong resigned from his employment with MPS on March 6, 2017. To the extent that Paragraph 62 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 62. Meraki otherwise denies the remaining allegations of Paragraph 62, including that "[Mr. Dong] had previously said he would be moving his family to California."

63.     Meraki admits that MPS sent a letter to Mr. Dong regarding the NDA that he had signed with MPS, and further admits that Exhibit E, on its face, purports to be a copy of the letter.

**Ms. Sheng's Ultimate Departure from MPS in April 2017**

64.     Meraki admits that Ms. Sheng resigned from her employment with MPS in January 2017 and terminated her employment with MPS on April 6, 2017. Meraki admits that Ms. Sheng considered going to work at a start-up company—Silana Semiconductor in North Carolina where Ms. Sheng was living—but denies that Ms. Sheng lied about her reason for resigning from MPS. Meraki also denies that Meraki competes against MPS for the same customers or with the same products. To the extent that Paragraph 64 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 64. Meraki otherwise denies the remaining allegations of Paragraph 64, including that "[Ms. Sheng] and Mr. Dong were secretly planning to start Meraki in China . . . while still employed at MPS" and that "Ms. Sheng and Mr. Dong never intended to work for MPS long term, and resigned in order to steal MPS's trade secret information to start Meraki."

**Forensic Evidence Allegedly Shows Voluminous Downloads of MPS Trade Secrets**

65.     To the extent that Paragraph 65 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 65. Meraki otherwise denies the remaining allegations of Paragraph 65.

66.     To the extent that Paragraph 66 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 66. Meraki otherwise denies the remaining allegations of Paragraph 66.

67.     To the extent that Paragraph 67 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 67. Meraki otherwise denies the remaining allegations of Paragraph 67.

68.     Meraki admits that Mr. Dong and Ms. Sheng signed Termination Certifications. Meraki further admits that Exhibits F and G purport to be copies of Mr. Dong's and Ms. Sheng's Termination Certifications. To the extent that Paragraph 68 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 68. Meraki otherwise denies the remaining allegations of Paragraph 68, including that Mr. Dong and Ms. Sheng "falsely certified that they did not have any MPS data storage devices to return."

**Formation of Defendant Meraki by Mr. Dong and Ms. Sheng**

69.     Meraki admits that Meraki was incorporated on April 20, 2017 after Mr. Dong and Ms. Sheng had each resigned from MPS. Meraki denies the remaining allegations in Paragraph 69.

70.     Meraki admits that Meraki was originally registered under the names of Shuzhen Chen (Mr. Dong's mother) and Rui Wang (Ms. Sheng's mother) to expedite the company registration process in China, but denies that Ms. Dong and Ms. Sheng wanted to avoid suspicion connected with the registration. Meraki lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 70 and, on that basis, denies them. Meraki otherwise denies the remaining allegations of Paragraph 70, including that Mr. Dong "chang[ed] his English name to Wesley only after his employment with MPS ended" and that Ms. Sheng "chang[ed] her English name to Elaine only after her employment with MPS ended."

71.     Meraki admits that Meraki's business registration involved Shenzhen Weina Dianshi Space Innovation Co., Ltd. ("Weina") because Weina provided company registration services and office space, but denies that Weina was an angel investor for Meraki. Meraki further denies that "Mr. Dong and Ms. Sheng had been conducting these negotiations [with an angel investor] while still employed with MPS." Meraki lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 71 and, on that basis, denies them. Meraki denies the remaining allegations in Paragraph 71.

72.     Meraki admits that Meraki's products include synchronous rectifier products, including its MK1808, MK91808, MK1718, MK91718, MK1708, MK1715, MK1716, MK17350, MK17360, MK91735, MK91736, MK91738, MK1705A, MK1706, and MK1709 products. Meraki denies that any of its products are pin-for-pin compatible with MPS's MP6908 product. Meraki denies that it has released any products identified by the model numbers MK1719, MK1807, or MK91807. Meraki denies the remaining allegations in Paragraph 72.

73.     Meraki denies that it sells its Accused Products to customers directly. Instead, it sells its products to distributors in China, who then sell them to customers (in China). Meraki generally does not know the identity of its distributor's customers. Meraki is aware that Meraki's indirect customers include charger manufacturers such as QingMi, Baseus, Lianxunfa, and Bull. Meraki further is aware that charger products of QingMi, Baseus, Lianxunfa, and Bull incorporate Meraki's synchronous rectifier products that are sold in China. Meraki denies that its synchronous rectifier products rely on the claimed inventions of any Asserted Patents or on any of MPS's alleged trade secrets. Meraki defines the remaining allegations in Paragraph 73.

74.     Meraki denies that it competes for the same customers with MPS, since it does not sell its Accused Products to customers directly. Meraki further denies that it aggressively purses

any customers with the intention of replacing MPS by promoting products that are pin-to-pin compatible and by undercutting MPS's prices using MPS's alleged trade secrets. Meraki denies that Mr. Dong, Ms. Sheng, or Meraki has ever misappropriated MPS's alleged trade secrets or used MPS's alleged trade secrets for "cutting time to market and decreasing expenditures related to research and development." Meraki denies the allegations in Paragraph 74.

**Defendant Meraki Allegedly Copies MPS Products Using Stolen MPS Trade Secrets**

75.    Meraki denies that any of Meraki's synchronous rectifier products, including its MK91808 product, are pin-to-pin compatible with MPS products like the MP6908. Meraki lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 75 and, on that basis, denies the same.

76.    Meraki lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 76 and, on that basis, denies the same.

77.    Meraki admits that its MK1808 product and MPS's MP6908 product may be used for the same applications, for example, both can be used as part of a flyback power supply, including in USB power delivery and quick charger applications. Meraki further admits that its MK1808 product is available in a SOT23-6 package, but denies that its MK1808 product has the same package as MPS's MP6908 product. Meraki denies that its MK1808 product has the same function and features as MPS's MP6908 product. Meraki denies that these two products have the same block-level circuits for realization. Meraki admits that its MK1808 product has ultra-fast turn-off (Meraki's MK1808 product turns off much faster than MPS's MP6908product is capable of turning off) synchronous rectifiers that support both DCM and CCM operations and quasi-resonant operations, but denies that Meraki's MK1808 product supports active clamp flyback functonality. Meraki admits that its MK1808 product does not require auxiliary winding for high-

side or low-side rectification, and that it works with standard synchronous rectifier MOSFETs. To the extent that the allegations in Paragraph 77 are outside of Meraki's knowledge, Meraki denies the allegations. Meraki otherwise denies the remaining allegations in Paragraph 77.

78.    Meraki denies the allegations in Paragraph 78.

79.    Meraki denies that the "MK1808 and MP6908 also have the same pin definition, but the MK1808 rearranges the order." Meraki denies that its MK91808 product is co-packed with a MOSFET, and denies that either its MK1808 or MK91808 product is pin-to-pin compatible with MPS's MP6908 product. Meraki admits that its MK91808 product is incorporated into certain products manufactured by Baseus. Meraki lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 79 and, on that basis, denies the same. Meraki otherwise denies the remaining allegations in Paragraph 79.

80.    Meraki denies that it copied its MK1808 and MK91808 products from MPS's MP6908 product based on confidential trade secret materials obtained from MPS by Mr. Dong and Ms. Sheng. Meraki further denies that it obtained the customer list and specific customer price information of MPS's MP6908 product. Meraki admits that it prepared marketing documents for customers that contain information about replacing synchronous rectifier products of other companies, including MPS's MP6908 product, with Meraki's MK91808 product based on an analysis of public product information. Meraki further admits that two resistors need to be changed to switch from using MPS's MP6908 product to Meraki's MK91808 product. Meraki denies the remaining allegations in Paragraph 80.

81.    Meraki admits that it developed a product that it designated the MK91718, which is integrated with a MOSFET. Meraki denies that its MK91718 product is pin-to-pin compatible with MPS's MP9989 product and denies that it is a co-packaged product of the MP6908 and a

MOSFET. Meraki admits that its MK1808 product, when combined with a MOSFET, creates a synchronous switching converter, but denies that a synchronous switching converter containing Meraki's MK1808 product infringes any claims of the Asserted Patents. Meraki denies that its MK1808 product has no substantial non-infringing uses. Meraki denies the remaining allegations in Paragraph 81.

82.     Meraki denies that it released its MK1808 product in 2018. In fact, Meraki released its MK1808 product in July 2019, and it took Meraki about 20 months—longer than a regular development time for an integrated circuit—to research and develop its MK1808 product. Meraki denies that Meraki, Mr. Dong, or Ms. Sheng ever misappropriated MPS's alleged trade secrets. Meraki lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 82 and, on that basis, denies the same. Meraki otherwise denies the remaining allegations in Paragraph 82.

**Meraki Allegedly Engages in Unfair Competition by Promoting Its Knock-Offs to MPS Customers**

83.     Meraki denies that its products infringe any of MPS's Asserted Patents or misappropriate any of MPS's alleged trade secrets. Meraki denies the remaining allegations in Paragraph 83.

84.     Meraki denies that it intended and encouraged any of its synchronous rectifier products to be imported and sold in the Unites States either by itself or its distribution network. Meraki admits that some of its product documents are written in English, but denies that it provides pricing in U.S. dollars in the ordinary course of business. Meraki has provided pricing quotations in U.S. dollars only to Promate for its Taiwan-based customers in response to Promate's requests. Meraki denies that Meraki markets that it has a United States office involved in research, design,

and marketing. Meraki further denies that it has ever directed any sales to the United States. Meraki admits that it defines only Promate's credit line in terms of U.S. dollars and that it provides Promate with a guarantee of non-infringement of third-party intellectual property rights. Meraki denies that the guarantee has no geographic limitation and denies that the guarantee covers any U.S. patents. Meraki generally knows that Delta and Lenovo have business in the United States, but denies that it competed for Delta's and Lenovo's business. Meraki further denies that Meraki specifically requested that Promate ship accused products to a customer in the United States. Meraki otherwise denies the remaining allegations of Paragraph 84.

85.     Meraki admits that it has general awareness of some ultimate end products that incorporate Meraki products. Meraki generally does not know the regional market where the products are destined to be sold except for the one-time shipment to the United States ordered by Sawblade Ventures, LLC. Meraki admits that it occasionally conducts joint presentations with its distributors to customers in response to the requests of its distributors or customers. Meraki further admits that it occasionally directly communicates with manufacturer customers to support distributors in developing and maintaining the customers. Meraki denies that it directs and oversees sales to manufacturer customers. Meraki denies that it requires that its distributors report and register customers with Meraki, and secure Meraki's approval, before any sales can be made. To the extent that the allegations in Paragraph 85 are outside of Meraki's knowledge, Meraki denies the allegations. Meraki otherwise denies the remaining allegations in Paragraph 85.

**Defendant Meraki's Filing of Patent Applications Allegedly Incorporating MPS Trade Secrets**

86.     Meraki denies that it used and publicly disclosed MPS's confidential trade secrets as part of Meraki's filing for patent applications in China, because the inventions embedded in

Meraki's Chinese patent applications were invented by Meraki's employees. Meraki further denies that Meraki's filing of a Chinese patent application disclosing its own inventions competitively harmed MPS in any way. Meraki denies the allegations in Paragraph 86.

87.     Meraki admits that it filed Chinese patent application numbers CN201810172629.2 and CN201820291252.8 on March 1, 2018, with Mr. Dong and Ms. Sheng identified as two of several named co-inventors. Meraki further admits that Chinese patent application CN201810172629.2 was published on July 27, 2018 as CN108336914A and that Chinese patent application CN201820291252.8 was published and issued on November 16, 2018 as CN208112519U. Meraki further admits that Exhibits H and I on their face are copies of Chinese patent publication number CN108336914A and Chinese patent number CN208112519U, respectively. To the extent that the remaining allegations in Paragraph 89 are directed to Meraki, Meraki denies such allegations. To the extent that the remaining allegations in Paragraph 89 are not directed to Meraki, Meraki lacks sufficient knowledge or information to admit or deny such allegations, and therefore denies the same.

88.     Meraki admits that Meraki filed Chinese patent application number CN201810181984.6 on March 6, 2018, with Mr. Dong and Ms. Sheng identified as two of several named co-inventors. Meraki further admits that Chinese patent application number CN201810181984.6 was published as CN108418432A on August 17, 2018 and issued as Chinese Patent No. CN108418432B on December 31, 2019. Meraki further admits that Exhibit J on its face is a copy of the Chinese patent publication number CN108418432A. To the extent that the remaining allegations in Paragraph 88 are directed to Meraki, Meraki denies such allegations. To the extent that the remaining allegations in Paragraph 88 are not directed to Meraki, Meraki lacks

sufficient knowledge or information to admit or deny such allegations, and therefore denies the same.

89.    Meraki admits that Meraki filed Chinese patent application number CN201920371028.4 on March 22, 2019, with Mr. Dong and Ms. Sheng identified as two of several named co-inventors. Meraki further admits that Chinese patent application number CN201920371028.4 was published as CN209488469U on October 11, 2019. Meraki further admits that Exhibit K on its face is a copy of Chinese patent number CN209488469U. To the extent that the remaining allegations in Paragraph 89 are directed to Meraki, Meraki denies such allegations. To the extent that the remaining allegations in Paragraph 89 are not directed to Meraki, Meraki lacks sufficient knowledge or information to admit or deny such allegations, and therefore denies the same.

**Defendants' Familiarity with the Asserted Patents**

90.    Meraki denies that Meraki had pre-suit knowledge of MPS's Asserted Patents. To the extent that Paragraph 90 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 90. Meraki otherwise denies the remaining allegations of Paragraph 88.

91.    Meraki admits that the '104 Patent purportedly claims priority to a Chinese patent application that was, on its face, filed on July 11, 2017, after Mr. Dong and Ms. Sheng left MPS. To the extent that Paragraph 91 makes allegations that are outside of Meraki's knowledge, Meraki denies the remaining allegations of Paragraph 91.

92.    Meraki admits that Meraki had knowledge of MPS's Asserted Patents from the filing and its ultimate receipt of a copy of the original complaint (ECF 1) in this action.

93.     Meraki admits that MPS named QingMi, Baseus, and Baseus Accessories LLC as defendants in MPS's Second Amended Complaint (ECF 63). Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations of Paragraph 93 and, on that basis, denies them.

**CLAIMS FOR RELIEF**

**CLAIM 1 – INFRINGEMENT OF U.S. PATENT NO. 8,400,790
BY DEFENDANTS**

94.     Meraki incorporates by reference its responses to Paragraphs 1-93 as if set forth fully here.

95.     Meraki denies the allegations in Paragraph 95.

96.     Meraki denies the allegations in Paragraph 96.

97.     Meraki admits that its MK1808 product is a synchronous rectifier with synchronous rectification circuitry and signals.

98.     Meraki denies the allegations in Paragraph 98.

99.     Meraki denies the allegations in Paragraph 99.

100.     Meraki denies that it induced the direct infringement of one or more claims of the '790 Patent under 35 U.S.C. § 271(b). Meraki admits that, on its face, Sawblade Ventures, LLC sent an email to Meraki to order some of the Accused Products in July 2020, one month before this suit was commenced. Meraki further admits that Promate Shenzhen (a Chinese subsidiary of Promate)—an unrelated third-party—made a one-time shipment of free product samples to the United States in response to the pre-textual order placed by Sawblade Ventures, LLC. Meraki denies that it specifically requested Promate to ship the Accused Products to Sawblade Ventures, LLC. Meraki admits that the Accused Products ordered by Sawblade Ventures, LLC were delivered into Texas, but Meraki lacks knowledge or information sufficient to form a belief

23

regarding the truth of the allegations that Sawblade Ventures, LLC is located in Texas, and, on that basis, denies the same. Meraki further denies that Promate's shipment was made under Meraki's inducement and specific intent for those products to be imported into the United States. Meraki denies that it induced Promate to infringe the '790 Patent by shipping the Accused Products into the United States. Meraki denies that it knew that Promate's acts would constitute infringement of the '790 Patent and denies that it knew that there was a high probability that Promate's acts would constitute infringement of the '790 Patent, but deliberately avoided confirming that belief. Meraki admits that its website generally provides an e-mail address, a phone number, and a postal address through which Meraki can be contacted by its clients and potential clients. To the extent that Paragraph 100 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 100. Meraki otherwise denies the remaining allegations of Paragraph 100.

101.    Meraki denies that it encouraged Unites States sales. Meraki admits that some of its product documentation is written in English, but denies it provides pricing in U.S. dollars in the ordinary course of business. Meraki has provided pricing quotations in U.S. dollars only to Promate for its Taiwan-based customers in response to Promate's requests. Meraki denies that Meraki markets that it has a United States office involved in research, design, and marketing. Meraki further denies that it has directed any sales to the United States. Meraki admits that it only defines Promate's credit line in terms of U.S. dollars, and provides Promate with a guarantee of non-infringement of third-party intellectual property rights. Meraki denies that the guarantee has no geographic limitation and denies that the guarantee covers any U.S. patents. Meraki generally knows that Delta and Lenovo have business in the United States, but denies that it competed with MPS for Delta's and Lenovo's business. Meraki further denies that it has any intent or encouraged

its downstream customers to offer for sale, sell, and/or import Accused Products in the United States. Meraki otherwise denies the remaining allegations of Paragraph 101.

102.    Meraki denies that it directly ships to, offers for sale, sells, or uses any Accused Products in the United States, much less in this forum. Meraki admits that Promate Shenzhen made a one-time shipment of free product samples to Texas in response to the pre-textual order placed by Sawblade Ventures, LLC. Meraki admits that some USB power strips manufactured by QingMi and USB wall chargers manufactured by Baseus incorporate some of the Accused Products, but denies that it has the knowledge or intent that such end products will be shipped to, offered for sale, sold, or used in this forum and throughout the United States. To the extent that Paragraph 102 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations. Meraki otherwise denies the remaining allegations in Paragraph 102.

103.    Meraki admits that it sold and continues selling some of the Accused Products to Baseus in China through Meraki's distributor, but denies that any of the Accused Products infringes any asserted claim of the '790 Patent. Meraki denies that it or its distributor(s) sold or continue selling any Accused Products to Qingmi or Xiaomi. Meraki admits it has general knowledge that Xiaomi and Baseus end-products incorporate some of Meraki's Accused Products. Meraki denies that it has knowledge of the exact Xiaomi and Baseus end-products sold in the United States that incorporate the Meraki's Accused Products. Meraki denies that sales of any end-products incorporating Meraki's Accused Products infringe the '790 patent. Meraki further denies that it has any ongoing active intent and encouragement of end retailers and customers to purchase and use alleged infringing products incorporating Meraki Accused Products in the United State. To the extent that Paragraph 103 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations. Meraki otherwise denies the remaining allegations in Paragraph 103.

104.     Meraki admits that it has general awareness of some ultimate end-products that incorporate Meraki products. Meraki generally does not know the regional market where the products are destined to be sold except for the one-time shipment to the United States ordered by Sawblade Ventures, LLC. Meraki admits that it occasionally conducts joint presentations with its distributors to customers in response to requests from the distributors or customers. Meraki further admits that it occasionally communicates with manufacturer customers to support distributors in developing and maintaining those customers. Meraki denies that it directs and oversees sales to manufacturer customers. Meraki denies that it requires that its distributors report and register customers with Meraki, and secure Meraki's approval, before any sales can be made. To the extent that the allegations in Paragraph 104 are outside of Meraki's knowledge, Meraki denies the allegations. Meraki otherwise denies the remaining allegations in Paragraph 104.

105.     Meraki admits that some Accused Products are integrated with a MOSFET component. Meraki admits that other Accused Products, including its MK1808 product, are combined with a MOSFET to create a switching converter, but Meraki denies that a switching converter containing its MK1808 product infringes any claims of the Asserted Patents and further denies that such Accused Products do not have a substantial non-infringing use. Meraki otherwise denies the remaining allegations in Paragraph 105.

106.     Meraki denies that it had pre-suit knowledge of the '790 Patent. Meraki admits that Mr. Dong and Ms. Sheng were employed by MPS and that their responsibilities at MPS related to MPS's synchronous rectifier products. To the extent that the allegations in Paragraph 106 are outside of Meraki's knowledge, Meraki denies the allegations. Meraki otherwise denies the remaining allegations in Paragraph 106.

107.    Meraki admits that it has knowledge of the '790 Patent from the filing of the original complaint (Dkt. No. 1) in this action, but denies that any of the Accused Products infringe any claim of the '790 Patent. Meraki admits that it has knowledge of MPS's allegations that some products "including without limitation USB power strips manufactured by QingMi for Xiaomi, and USB wall chargers manufactured and branded by Baseus" "incorporate[] Meraki components" from the allegations made by MPS in its Second Amended Complaint (Dkt. No. 63), but denies that any of such products infringe any claim of the '790 Patent. Meraki denies that Mr. Dong or Ms. Sheng copied the functionality of any MPS products, including MPS's MP6908 product, into Meraki products including its MK1808 and MK91808 products. To the extent that the allegations in Paragraph 107 are outside of Meraki's knowledge, Meraki denies the allegations. Meraki otherwise denies the remaining allegations in Paragraph 107.

108.    Meraki denies that it copied any functionality of MPS's MP6908 product into Meraki's MK1808 product, and further denies that any functionality of Meraki's MK1808 product infringes any claim of the '790 Patent. Meraki denies that it released the MK1808 product in 2018, and further denies that the development duration of the MK1808 product was faster than such a product could have been developed. Meraki released its MK1808 product in July 2019, having taken Meraki about 20 months—longer than a regular development time for an integrated circuit— to research and develop this product. Meraki admits that its MK1808 product and MPS's MP6908 product can be used for the same applications, for example, both can be incorporated in flyback power supplies, including for USB power delivery and quick charger applications. Meraki further admits that its MK1808 product is available in a SOT23-6 package, but denies that its MK1808 product has the same package as MPS's MP6908 product. Meraki denies that that its MK1808 product has the same function and features as MPS's MP6908 product. Meraki denies that the two

products have even the same block-level circuits for realization. Meraki admits that its MK1808 product MP6908 product is an ultra-fast turn-off (Meraki's MK1808 turns off much faster than MPS's MP6908 is capable of turning off) synchronous rectifier that supports both DCM and CCM operations and quasi-resonant operations, but denies that Meraki's MK1808 product supports active clamp flyback functionality. Meraki admits that its MK1808 product does not require auxiliary winding for high-side or low-side rectification, and that both work with standard synchronous rectifier MOSFETs. Meraki admits that, on its face, the claims of the '790 Patent require a measure of gate voltage to determine when to latch off synchronous rectification. Meraki denies that its MK1808 product uses a measure of gate voltage to determine when to turn off or latch off synchronous rectification. Meraki admits that it prepared some documents for customers wherein there are slides about replacing synchronous rectifier products of other companies, including MPS's MP6908 product, with Meraki's MK91808 product based on the technical analysis of public product information. Meraki admits that two resistors need to be adjusted to replace MPS's MP6908 product with Meraki's MK91808 product. To the extent that the allegations in Paragraph 108 are outside of Meraki's knowledge, Meraki denies the allegations. Meraki otherwise denies the remaining allegations in Paragraph 108.

109.    Meraki denies that in designing and developing any of the Accused Products, Mr. Dong, Ms. Sheng, or Meraki knew that any of its products infringed any claim of the '790 Patent, or were willfully blind to the alleged risk of infringing any claims of the '790 Patent. Meraki denies that Mr. Dong and Ms. Sheng used any knowledge and experience they gained during the course of their employment at MPS to design and develop any of Meraki's products. Meraki denies that it ever sold any products identified by product numbers MK1719, MK1807, or MK91807. To the

extent that the allegations in Paragraph 109 are outside of Meraki's knowledge, Meraki denies the allegations. Meraki otherwise denies the remaining allegations in Paragraph 109.

110.     Meraki denies the allegations in Paragraph 110.

111.     Meraki denies the allegations in Paragraph 111.

## CLAIM 2 – INFRINGEMENT OF U.S. PATENT NO. 10,432,104 BY DEFENDANTS

112.     Meraki incorporates by reference its responses to Paragraphs 1-111 as if set forth fully here.

113.     Meraki denies the allegations in Paragraph 113.

114.     Meraki denies the allegations in Paragraph 114.

115.     Meraki admits that its MK1808 product is a controller for a synchronous rectifier.

116.     Meraki denies the allegations in Paragraph 116.

117.     Meraki denies the allegations in Paragraph 117.

118.     Meraki denies the allegations of Paragraph 118.

119.     Meraki denies that it induced the direct infringement of one or more claims of the '104 Patent under 35 U.S.C. § 271(b).  Meraki admits that, on its face, Sawblade Ventures, LLC sent an email to Meraki to order some of the Accused Products in July 2020, one month before this suit was commenced.  Meraki further admits that Promate Shenzhen (a Chinese subsidiary of Promate)—an unrelated third-party—made a one-time shipment of free product samples to the United States in response to the pre-textual order placed by Sawblade Ventures, LLC.  Meraki denies that it requested Promate to ship the Accused Products to Sawblade Ventures, LLC.  Meraki admits that the Accused Products ordered by Sawblade Ventures, LLC were delivered into Texas, but Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that Sawblade Ventures, LLC is located in Texas and, on that basis, denies the same.

29

Meraki further denies that Promate's shipment was made under Meraki's inducement and specific intent for those products to be imported into the United States. Meraki denies that it induced Promate to infringe the '104 Patent by shipping the Accused Products into the United States. Meraki denies that it knew that Promate's acts would constitute infringement of the '104 Patent and denies that it knew that there was a high probability that Promate's acts would constitute infringement of the '104 Patent, but deliberately avoiding confirming that belief. Meraki admits that its website, which is in Chinese, generally provides e-mail, phone, and postal address contact information through which Meraki can be contacted by its clients and potential clients. To the extent that Paragraph 119 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 119. Meraki otherwise denies the remaining allegations of Paragraph 119.

120.    Meraki denies that it encouraged sales of its products in the United States. Meraki admits that some of its product documentation is written in English, but denies that it provides pricing in U.S. dollars in the ordinary course of business. Meraki has provided price quotations in U.S. dollars only to Promate for its Taiwan-based customers in response to Promate's requests. Meraki denies that Meraki markets that it has a United States office involved in research, design, and marketing. Meraki further denies that it has directed any sales to the United States. Meraki admits that it defines only Promate's credit line in terms of U.S. dollars, and provides Promate with a guarantee of non-infringement of third-party intellectual property rights. Meraki denies that Meraki provides Promate a guarantee having no geographic limitation and denies that the guarantee covers any U.S. patents. Meraki generally knows that Delta and Lenovo have business in the United States, but denies that it competed with MPS for Delta's and Lenovo's business. Meraki further denies that it has any intent to or encouraged its downstream customers to offer for

sale, sell, and/or import Accused Products in the United States.  Meraki otherwise denies the remaining allegations of Paragraph 120.

121.    Meraki denies that it directly ships to, offers for sale, sells, or uses any Accused Products in the United States, much less in this forum.  Meraki admits that Promate Shenzhen made a one-time shipment of free product samples to Texas in response to the pre-textual order placed by Sawblade Ventures, LLC.  Meraki admits that some USB power strips manufactured by QingMi and USB wall chargers manufactured by Baseus incorporate some of the Accused Products but denies that it has the knowledge or intent that such end products will be shipped to, offered for sale, sold, or used in this forum and throughout the United States.  To the extent that Paragraph 121 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations.  Meraki otherwise denies the remaining allegations in Paragraph 121.

122.    Meraki admits that it sold and continues selling some of the Accused Products to Baseus in China through its distributor, and denies that any of the Accused Products infringe any claim of the '104 Patent. Meraki denies that it or its distributors sold or continues to sell any Accused Products to Qingmi or Xiaomi. Meraki admits it has general knowledge that some Xiaomi and Baseus end-products incorporate some of Meraki's Accused Products. Meraki denies that it has knowledge of the exact Xiaomi and Baseus end-products sold in the Uniates States that incorporate the Meraki Accused Products. Meraki denies that sales of any end-products incorporating Meraki's Accused Products infringe any claim of the '104 patent. Meraki further denies that it has any ongoing active intent and encouragement of end retailers and customers to purchase and use alleged infringing products incorporating Meraki Accused Products in the United State.  To the extent that Paragraph 122 makes allegations that are outside of Meraki's knowledge,

Meraki denies the allegations.  Meraki otherwise denies the remaining allegations in Paragraph 122.

123.    Meraki admits that it has general awareness of some ultimate end products that incorporate Meraki products. Meraki generally does not know the regional market where the products are destined to be sold except for the one-time shipment to the United States ordered by Sawblade Ventures, LLC.  Meraki admits that it occasionally conducts joint presentations with its distributors to customers in response to requests of its distributors or customers.  Meraki further admits that it occasionally communicates with manufacturer customers to support distributors in developing and maintaining those customers.  Meraki denies that it directs and oversees sales to manufacturer customers.  Meraki denies that it requires that its distributors report and register customers with Meraki, and secure Meraki's approval, before any sales can be made.  To the extent that the allegations in Paragraph 123 are outside of Meraki's knowledge, Meraki denies the allegations.  Meraki otherwise denies the remaining allegations in Paragraph 123.

124.    Meraki admits that some Accused Products are integrated with a MOSFET component. Meraki admits that other Accused Products including its MK1808 product are combined with a MOSFET to create a switching converter, but Meraki denies that a switching converter containing the MK1808 product infringes any claim of the Asserted Patents and further denies that such Accused Products do not have a substantial non-infringing use. Meraki otherwise denies the remaining allegations in Paragraph 124.

125.    Meraki denies that it had pre-suit knowledge of the '104 Patent.  Meraki admits that Mr. Dong and Ms. Sheng were employed by MPS and that their responsibilities at MPS related to MPS's synchronous rectifier products.  Meraki admits that the 104 Patent on its face claims priority to a Chinese patent with a priority date of July 11, 2007, which date is after Mr. Dong and

Ms. Sheng's left MPS's employment.  Meraki further admits that the 104 'Patent on its face lists Hui Li, Lei Miao, Siran Wang, and Lin Feng as inventors. To the extent that the allegations in Paragraph 125 are outside of Meraki's knowledge, Meraki denies the allegations. Meraki otherwise denies the remaining allegations in Paragraph 125.

126.    Meraki admits that it has knowledge of the '104 Patent from the filing of the original complaint (Dkt. No. 1) in this action, but denies that any of Meraki's Accused Products infringe any claim of the '104 Patent.  Meraki admits that it has knowledge of MPS's allegations that some products "including without limitation USB power strips manufactured by QingMi for Xiaomi, and USB wall chargers manufactured and branded by Baseus" "incorporate[] Meraki components" from the allegations that MPS made in its the Second Amended Complaint (Dkt. No. 63), but denies that any of such products infringe any claim of the '104 Patent.  Meraki denies that Mr. Dong and Ms. Sheng copied the functionality of any MPS product, including MPS's MP6908 product, into Meraki products, including its MK1808 and MK91808 products. To the extent that the allegations in Paragraph 126 are outside of Meraki's knowledge, Meraki denies the allegations. Meraki otherwise denies the remaining allegations in Paragraph 126.

127.    Meraki admits that Mr. Dong and Ms. Sheng used to work for MPS.  Meraki denies that Meraki has copied information from MPS including MPS's confidential product specification and description documents for MPS's synchronous rectifier products, including without limitation MPS's MP6908 product. Meraki further denies that Meraki has sold the accused devices with the knowledge and intent that they infringe the '104 Patent.  To the extent that the allegations in Paragraph 127 are outside of Meraki's knowledge, Meraki denies the allegations.  Meraki otherwise denies the remaining allegations in Paragraph 127.

128.    Meraki denies that it copied any functionality of MPS's MP6908 product into Meraki's MK1808 product, and further denies that any functionality of Meraki's MK1808 product infringes any asserted claim of the '104 Patent. Meraki denies that it released MK1808 in 2018, and further denies that the development duration of its MK1808 product was faster than such a product could have been developed. Meraki released its MK1808 product in July 2019, having taken Meraki about 20 months—longer than a regular development time for an integrated circuit—to research and develop this product. Meraki admits that its MK1808 product and MPS's MP6908 product can be used for the same applications, for example, both can be used within flyback power supplies, including in USB power delivery and quick charger applications. Meraki further admits that its MK1808 product is available in a SOT23-6 package, but denies that its MK1808 product has the same package as MPS's MP6908 product. Meraki denies that that its MK1808 product has the same function and features as MPS's MP6908 product. Meraki denies that the two products have even the same block-level circuits for realization. Meraki admits that its MK1808 product is an ultra-fast turn-off (Meraki's MK1808 product turns off much faster than MPS's MP6908 is capable of turning off) synchronous rectifiers that support both DCM and CCM operations and quasi-resonant operations, but denies that its MK1808 product supports active clamp flyback functionality. Meraki admits that its MK1808 product does not require auxiliary winding for high-side or low-side rectification, and that it works with standard synchronous rectifier MOSFETs. Meraki admits that, on its face, the claims of the '104 Patent require the use of slew rate detection to avoid false turn-ons.  Meraki denies that its MK1808 product uses slew rate detection to avoid false turn-ons and denies it advertised such functionality in its marketing materials. Meraki admits that some Meraki documents provided to customers show that the synchronous rectifiers sold by other companies, including MPS's MP6908 product, can be replaced with Meraki's MK91808

34

product based on a technical analysis of public product information, and admits that two resistors need to be adjusted to replace MPS's MP6908 product with Meraki's MK91808 product. To the extent that the allegations in Paragraph 128 are outside of Meraki's knowledge, Meraki denies the allegations. Meraki otherwise denies the remaining allegations in Paragraph 128.

129.     Meraki denies that in designing, developing, manufacturing, marketing and selling any of the Accused Products, Mr. Dong, Ms. Sheng, or Meraki knew that any of these products infringed any claim of the '104 Patent or were willfully blind to alleged risk of infringing the claims of the '104 Patent. Meraki denies that Mr. Dong and Ms. Sheng used any knowledge and experience that they gained during the course of their employment at MPS to design and develop any of Meraki's products. Meraki denies that it sold any products identified by the model numbers MK1719, MK1807, or MK91807. To the extent that the allegations in Paragraph 129 are outside of Meraki's knowledge, Meraki denies the allegations. Meraki otherwise denies the remaining allegations in Paragraph 129.

130.     Meraki denies the allegations in Paragraph 130.

131.     Meraki denies the allegations in Paragraph 131.

## CLAIM 3 – MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT OF 2016 BY MERAKI

132.     Meraki incorporates by reference its responses to Paragraphs 1-131 as if set forth fully here.

133.     Meraki objected to MPS's Preliminary Identification of Trade Secrets on July 22, 2021 because MPS failed to comply with the Court's March 12, 2021 Scheduling Order (ECF 35), and as a result of MPS's failure to identify its alleged trade secrets properly, trade secrets related discovery has not opened yet. Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that MPS maintains confidential information and trade secrets

about MPS's synchronous rectifier products including its MP6908 product, MPS customer lists, and pricing information as alleged in Paragraph 133 and, on that basis, denies them. To the extent that Paragraph 133 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 133.

134. Meraki admits that Mr. Dong and Ms. Sheng are experts on synchronous rectifier products in light of their decades of experience in the industry. Meraki admits that Mr. Dong and Ms. Sheng were employed by MPS for less than one year. Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that MPS maintains confidential and proprietary information, including proprietary and confidential know-how, negative know-how (regarding what potential solutions did not work and were unsuccessful), ideas, processes, improvements, discoveries, developments, designs and techniques as alleged in Paragraph 134 and, on that basis, denies them. To the extent that Paragraph 134 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 134. Meraki otherwise denies the remaining allegations of Paragraph 134.

135. Meraki objected to MPS's Preliminary Identification of Trade Secrets on July 22, 2021 because MPS failed to comply with the Court's March 12, 2021 Scheduling Order (ECF 35), and as a result of MPS's failure to identify its alleged trade secrets properly, trade secrets related discovery has not opened yet. Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that MPS's alleged confidential and proprietary information described in Paragraphs 133 and 134 constitute "trade secrets" as defined under 18 U.S.C. § 1839(3), and, on that basis, denies them. The remaining allegations of Paragraph 135 are outside of Meraki's knowledge, and Meraki denies them.

136.     Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that MPS's alleged trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, competitors who can obtain economic value from the disclosure or use of the information as alleged in Paragraph 136.  Meraki also lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that MPS derives independent economic value from the confidential design of its products as alleged in Paragraph 136.  Meraki further lacks knowledge or information sufficient to form a belief regarding the truth of the allegation that MPS derives independent economic value from its customer lists and pricing as alleged in Paragraph 136.  Therefore, Meraki denies the allegations of Paragraph 136.

137.     Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that MPS has taken reasonable steps to maintain the confidentiality of its alleged trade secrets as alleged in Paragraph 137 and, on that basis, denies them.  To the extent that Paragraph 137 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 137.

138.     Meraki admits that Mr. Dong and Ms. Sheng signed Confidential Information and Invention Assignment Agreements with MPS.  Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that MPS maintains its alleged trade secret design, customer, and pricing information as alleged in Paragraph 138 and, on that basis, denies them.  To the extent that Paragraph 138 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 138.

139.     Meraki admits that Meraki designs its own synchronous rectifier products.  Meraki further admits that Meraki filed patent applications in China on which Mr. Dong and Ms. Sheng

are identified as inventors. Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that MPS maintains its alleged trade secret design information as alleged in Paragraph 139 and, on that basis, denies them. To the extent that Paragraph 139 makes allegations that are outside of Meraki's knowledge, Meraki denies the allegations of Paragraph 139.

140.    Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that MPS maintains its trade secrets as alleged in Paragraph 140 and, on that basis, denies them. Meraki denies the remaining allegations of Paragraph 140.

141.    Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that MPS maintains its alleged trade secret customer and pricing information as alleged in Paragraph 141 and, on that basis, denies them. Meraki denies the remaining allegations of Paragraph 141.

142.    Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that MPS maintains its alleged trade secrets, including highly confidential design, customer, and price data, as alleged in Paragraph 142 and, on that basis, denies them. Meraki denies the remaining allegations of Paragraph 142.

143.    Meraki denies the allegations of Paragraph 143.

144.    Meraki denies the allegations of Paragraph 144.

145.    Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that MPS maintains its alleged confidential and proprietary trade secrets as alleged in Paragraph 145 and, on that basis, denies them. Meraki denies the remaining allegations of Paragraph 145.

146.    Meraki denies the allegations of Paragraph 146.

147.     Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that MPS maintains its alleged trade secrets as alleged in Paragraph 147 and, on that basis, denies them.  Meraki denies the remaining allegations of Paragraph 147.

148.     Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that MPS maintains its alleged trade secrets as alleged in Paragraph 148 and, on that basis, denies them.  Meraki denies the remaining allegations of Paragraph 148.

149.     Meraki denies the allegations of Paragraph 149.

150.     Meraki denies that MPS is entitled to the requested relief in Paragraph 150.

## CLAIM 4 – MISAPPROPRIATION OF TRADE SECRETS UNDER STATE LAW BY MERAKI

151.     Meraki incorporates by reference its responses to Paragraphs 1-150 as if set forth fully here.

152.     Meraki denies that Meraki violates the Defend Trade Secrets Act.  Meraki further denies that Meraki violates Texas's codification of the Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code Ann. §134A.001 et seq. ("TUTSA").

153.     Meraki denies the allegations of Paragraph 153.

154.     Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that MPS maintains its alleged confidential and proprietary trade secrets as alleged in Paragraph 154 and, on that basis, denies them.  Meraki denies the remaining allegations of Paragraph 154.

155.     Meraki lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that MPS maintains its alleged trade secrets as alleged in Paragraph 155 and, on that basis, denies them.  Meraki denies the remaining allegations of Paragraph 155.

156.     Meraki denies the allegations of Paragraph 156.

157.    Meraki denies the allegations of Paragraph 157.

158.    Meraki denies that MPS is entitled to the requested relief in Paragraph 158.

## CLAIM 5 – TORTIOUS INTERFERENCE BY MERAKI

159.    Meraki incorporates by reference its responses to Paragraphs 1-158 as if set forth fully here.

160.    Meraki lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 160, and therefore denies the same.

161.    Meraki lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 161, and therefore denies the same.

162.    Meraki lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 162, and therefore denies the same.

163.    Meraki denies the allegations of Paragraph 163.

164.    Meraki denies the allegations of Paragraph 164.

165.    Meraki denies the allegations of Paragraph 165.

166.    Meraki denies the allegations of Paragraph 166.

167.    Meraki denies the allegations of Paragraph 167.

168.    Meraki denies the allegations of Paragraph 168.

169.    Meraki denies the allegations of Paragraph 169.

170.    Meraki denies that MPS is entitled to the requested relief in Paragraph 170.

## CLAIM 6 – UNFAIR COMPETITION BY MERAKI

171.    Meraki incorporates by reference its responses to Paragraphs 1-170 as if set forth fully here.

172.    Meraki lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 172, and therefore denies the same.

173.    Meraki denies the allegations of Paragraph 173.

174.    Meraki lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 174, and therefore denies the same.

175.    Meraki lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 175, and therefore denies same.

176.    Meraki denies the allegations of Paragraph 176.

177.    Meraki denies the allegations of Paragraph 177.

178.    Meraki denies the allegations of Paragraph 178.

179.    Meraki denies the allegations of Paragraph 179.

180.    Meraki denies the allegations of Paragraph 180.

181.    Meraki denies that MPS is entitled to the requested relief in Paragraph 181.

## SPOLIATION OF EVIDENCE

182.    Meraki incorporates by reference its responses to Paragraphs 1-181 as if set forth fully here.

183.    Meraki admits that after it learned this action had filed, it had a duty to preserve relevant evidence, including relevant electronically stored information (ESI) in Meraki's possession, custody, or control.

184.    Paragraph 184 contains a notice to which no response is required. Meraki denies any remaining allegations in Paragraph 184.

## DEMAND FOR JURY TRIAL

185.    Paragraph 185 contains a demand for jury trial to which no response is required. Meraki also demands a trial by jury on all issues so triable, in accordance with Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

Meraki specifically denies any factual assertions and underlying allegations contained in the prayer for relief, and further denies that MPS is entitled to any relief sought in its prayer for relief. To the extent any allegations of the Third Amended Complaint have not been previously specifically admitted or denied, Meraki denies them.

## MERAKI'S DEFENSES

Without any admission as to the burden of proof, and subject to its responses above, Meraki asserts the following defenses, upon information and belief, in response to the allegations of the Third Amended Complaint. Regardless of how such defenses are listed herein, Meraki undertakes the burden of proof only as to those defenses that are deemed affirmative defenses as a matter of law. Meraki expressly reserves the right to amend or raise additional defenses pursuant to any docket control order or as additional information becomes available through further investigation and discovery.

### First Defense
### (Failure to State a Claim)

MPS's Third Amended Complaint fails to state facts sufficient to state a cause of action and fails to state any claim against Meraki upon which relief may be granted. For example, the Third Amended Complaint still fails to state a claim for willful patent infringement, as the Court ordered with respect to the First Amended Complaint on September 1, 2021. *See* ECF 54.  MPS's claims for willful patent infringement re-alleged in the Third Amended Complaint have the same

deficiencies as in the First Amended Complaint and thus should be dismissed or stricken for violation of the Court's Order (ECF 54).

## Second Defense
## (Noninfringement of the Asserted Patents)

Meraki has not infringed and does not infringe, directly or indirectly, literally or by the doctrine of equivalents, any valid and enforceable claim of any of the Asserted Patents. The Court granted Meraki's motion to dismiss MPS's claims of willful infringement of the Asserted Patents in the First Amended Complaint. *See* ECF 54. MPS's claims for willful patent infringement re-alleged in the Third Amended Complaint have the same deficiencies as in the First Amended Complaint and thus should be dismissed or stricken for violation of the Court's Order (ECF 54).

## Third Defense
## (Invalidity of the Asserted Patents)

One or more asserted claims of the Asserted Patents are invalid for failure to satisfy one or more of the requirements for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

## Fourth Defense
## (Unenforceability of the Asserted Patents)

One or more asserted claims of the Asserted Patents are unenforceable due to MPS's inequitable conduct during prosecution of the Asserted Patents.

## Fifth Defense
## (Prosecution History Estoppel)

By reason of statements, representations, admissions, concessions, arguments, omissions and/or amendments made by and/or on behalf of the applicants during prosecution of the Asserted Patents, MPS's claims of patent infringement against Meraki are barred, in whole or in part, by the doctrine of prosecution history estoppel and/or disclaimer.

**Sixth Defense**
**(Equitable Defenses)**

MPS's claims are barred, in whole or in part, by the doctrines of waiver, implied waiver, acquiescence, equitable estoppel, unclean hands, doctrine of laches, and/or other equitable remedies.

**Seventh Defense**
**(Limitation on Damages and Other Remedies)**

MPS's patent infringement claims against Meraki for recovery are barred, in whole or in part, for failure to comply with the marking and notice requirements of 35 U.S.C. § 287.

**Eighth Defense**
**(Recovery for Cost Barred)**

MPS's patent infringement claims against Meraki for recovery for cost are barred, in whole or in part, on the grounds that the Asserted Patents contain invalid claims under 35 U.S.C. § 288.

**Ninth Defense**
**(No Misappropriation)**

MPS's trade secret misappropriation claims are barred, in whole or in part, on the grounds that Meraki did not improperly acquire, use, or disclose MPS's alleged trade secrets, or Meraki did not have reason to know of any impropriety.

**Tenth Defense**
**(Public Information or Readily Ascertainable by Proper Means)**

MPS's trade secret misappropriation claims are barred, in whole or in part, on the grounds that the purported trade secret information was in the public domain or readily ascertainable through proper means, *e.g.*, discovery by independent development, reverse engineering that was not prohibited or common knowledge, at the time of the alleged misappropriation. Reverse engineering means the process of studying, analyzing, or disassembling a product or device to

discover its design, structure, construction, or source code provided that the product or device was acquired lawfully or from a person having the legal right to convey it.

### Eleventh Defense
### (Independent Development)

MPS's trade secret misappropriation claims are barred, in whole or in part, on the grounds that Meraki developed the technology-at-issue based on proper means including its own employees' skill and experience, its own information, and/or publicly-available information, without using any of MPS's alleged trade secrets.

### Twelfth Defense
### (Failure to Keep Information Secret)

MPS's trade secret misappropriation claims are barred, in whole or in part, on the grounds that MPS failed to take reasonable measures under the circumstances to keep the information secret and therefore does not have "trade secrets" within the meaning of the DTSA or TUTSA.

### Thirteenth Defense
### (Failure to Identify Alleged trade Secrets with Reasonable Particularity)

MPS's trade secret misappropriation claims are barred, in whole or in part, to the extent that MPS failed to identify its purported trade secrets with reasonable particularity.

### Fourteenth Defense
### (Preemption under TUTSA)

MPS's claims for civil remedies that are based upon misappropriation of a trade secret (other than the claims for misappropriation of trade secrets) are barred, in whole or in part, on the grounds that they are preempted by the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem Code Ann. §§ 134A.007.

**Fifteenth Defense**
**(Void and/or Unenforceable Contractual Provisions)**

MPS's trade secret misappropriation claims are barred, in whole or in part, on the

grounds that they are premised, in whole or in part, on contractual provisions that are void

and/or unenforceable under applicable law.

**Sixteenth Defense**
**(Meraki's Liability Excused)**

To the extent that Meraki's purported liability is premised on alleged underlying

breaches of contracts by Mr. Dong and Ms. Sheng, Meraki's liability was excused on the

grounds that MPS materially breached the contracts signed with Mr. Dong and Ms. Sheng,

constructively discharged Mr. Dong and Ms. Sheng, and breached the implied covenant of

good faith and fair dealing inherent in MPS's contracts with Mr. Dong and Ms. Sheng.

**Seventeenth Defense**
**(No Unfair Competition)**

MPS's claim for unfair competition is barred, in whole or in part, to the extent that the

alleged underlying acts giving rise to the claim did not occur or were not unlawful.

**Eighteenth Defense**
**(Competitor's Privilege)**

MPS's claims for unfair competition and tortious interference are barred, in whole or

in part, by the competitor's privilege. A competitor is entitled to compete freely, absent

statutory prohibitions, illegitimate means, or unlawful conduct.

**Nineteenth Defense**
**(Valid and Legitimate Business Purpose)**

MPS's claims for unfair competition and tortious interference are barred, in whole or

in part, on the grounds that Meraki's alleged conduct was at all times justified and

undertaken in the good faith exercise of a valid and legitimate business purpose.

**Twentieth Defense**
**(Good Faith)**

Without admitting that Meraki is at fault in any way or that MPS has incurred any

damages, and solely for the purpose of stating this defense, any award to MPS under its

claim is barred on the ground that every action taken by Meraki constituted a good faith

belief that such action was lawful.

**Twenty-First Defense**
**(MPS's Failure to Mitigate the Damages)**

To the extent MPS has suffered any damages, any damages award to MPS must be

reduced on the basis of MPS's failure to mitigate the damages by failure and refusal to make

reasonable efforts to provide products and services.

**Twenty-Second Defense**
**(Third-parties' Conduct)**

MPS's damages, if any, were caused by the conduct of other individuals or business

entities over whom Meraki had no control and for whose actions it should not be held

responsible.

**Twenty-Third Defense**
**(Not Entitled to Injunctive Relief)**

MPS's claim for injunctive relief should be dismissed, in whole or in part, because,

among other things, MPS has delayed seeking interim relief and cannot show the existence

of irreparable harm or the absence of an adequate remedy at law, and the balance of

hardships and public interest do not favor a preliminary or permanent injunction in this case.

**Twenty-Fourth Defense**
**(No Damages)**

MPS's claims for damages relief is barred, in whole or in part, because it has suffered

no damages.

**Demand for Jury Trial**

In accordance with FED. R. CIV. P. 38(b), Meraki demands a trial by jury on all issues so triable.

**Reservation of Remaining Defenses**

Meraki reserves all defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws and the Defend Trade Secrets Act of the United States, and any other defenses, at law or in equity, which may now exist or in the future be available based on discovery.

## MERAKI'S COUNTERCLAIMS

186.    This is an action seeking declaratory judgements of non-infringement and invalidity of the claims of United States Patent Nos. 8,400,790 (the '790 Patent") and 10,432,104 ("the '104 Patent") (together, the "Asserted Patents").

## THE PARTIES

187.    Counterclaimant Meraki Integrated Circuit (Shenzhen) Technology, Ltd. ("Meraki") is a corporation organized and existing under the laws of the People's Republic of China with its principal place of business at 16E, Shenzhen Free Trade Center, 111 Taizi Road, Shekou, Nanshan District, Shenzhen.

188.    Upon information and belief, Counterclaim Defendant Monolithic Power Systems, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business and headquarters at 5808 Lake Washington Boulevard NE, Kirkland, Washington 98033.

189.    Upon information and belief, Counterclaim Defendant Chengdu Monolithic Power Systems Co., Ltd. (together with Monolithic Power Systems, Inc., "MPS") is a corporation organized and existing under the laws of the People's Republic of China with its principal place

48

of business at No. 8 Kexin Road, West Park of Export, Processing Zone West Hi-Tech Zone, Chengdu, Sichuan, 611731.

190.    This Counterclaims arise under the Patent Laws of the United States, 35 U.S.C. §§ 100, *et seq*., and the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, based on an actual justiciable controversy between Meraki and MPS. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a) and 2201.

191.    MPS has submitted to the personal jurisdiction of this Court by bringing the present action against Meraki.

192.    To the extent that venue is proper in the underlying patent infringement action, venue is proper here as to these Counterclaims under 28 U.S.C. §§ 1391 and 1400(b). However, Meraki reserves the right to move to transfer venue in the underlying patent infringement action to a more convenient judicial district irrespective of the allegations in these Counterclaims.

## FIRST COUNTERCLAIM

### (Declaratory Judgment of Noninfringement of the Claims of the '790 Patent)

193.    Meraki re-alleges and incorporates by reference the allegations in Paragraphs 1-7 of its Counterclaims.

194.    There exists an actual case or controversy between Meraki and MPS concerning the alleged infringement of the claims of the '790 Patent by virtue of MPS's Third Amended Complaint and Meraki's Answers and Defenses thereto. In its Third Amended Complaint, MPS alleged that Meraki's synchronous rectifier products, including, e.g., Meraki's MK1808, MK91808, MK1718, MK91718, MK1708, MK1807, MK91807, MK1715, MK1716, MK17350, MK17360, MK91735, MK91736, MK91738, MK1705A, MK1706, MK1709, and MK1719 product families ("Accused Products") infringe one or more claims of the '790 Patent under 35

U.S.C. § 271(a). ECF 96 at ¶ 95. In its Final Infringement Contentions dated October 4, 2021, MPS asserted that Meraki infringes claims 1 and 14-16 of the '790 Patent.

195.    Meraki has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '790 Patent. For example, Meraki's Accused Products do not include at least a "light load control circuit" and do not "selectively latch[] off synchronous rectification of said synchronous rectifier" as required by asserted claim 1 and similarly required by asserted claims 14-16 of the '790 Patent.

196.    Meraki therefore seeks a declaration from this Court that Meraki does not infringe any claim of the '790 Patent.

## SECOND COUNTERCLAIM

### (Declaratory Judgment of Invalidity of the Claims of the '790 Patent)

197.    Meraki re-alleges and incorporates by reference the allegations in Paragraphs 1-11 of its Counterclaims.

198.    There exists an actual case or controversy between Meraki and MPS concerning the alleged infringement of the '790 Patent by virtue of MPS's Third Amended Complaint and Meraki's Answer and Defenses thereto.

199.    One or more claims of the '790 Patent are invalid for failure to meet one or more of the requirements for patentability set forth in Title 35 of the United States Code, including, but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

200.    For example, and without limitation, one or more claims of the '790 Patent are invalid under each section of 35 U.S.C. §§ 102 and/or 103 based on prior art that was known or used in the United States, and that the patent was invented by another. For example, U.S. Patent Publication No. 2009/0033299 to Ishino anticipates and/or renders obvious asserted claims 1 and

14-16 of the '790 Patent under pre-AIA 35 U.S.C. § 102 and § 103. Also, U.S. Patent No. 8,111,051 to Sakai et al. ("Sakai"), U.S. Patent No. 6,191,964 to Boylan et al. ("Boylan"), U.S. Patent Publication No. 2008/0290854 to Uchiike ("Uchiike"), and U.S. Patent No. 7,869,231 to Cohen ("Cohen"), individually or in combination or in view of other prior art, anticipates and/or renders obvious asserted claims 1 and 14-16 of the '790 Patent under at least pre-AIA 35 U.S.C. § 102 and § 103.

201.    Meraki therefore seeks a declaration from this Court that one or more of the claims of the '790 Patent are invalid.

**THIRD COUNTERCLAIM**

**(Declaratory Judgment of Noninfringement of the Claims of the '104 Patent)**

202.    Meraki re-alleges and incorporates by reference the allegations in Paragraphs 1-16 of its Counterclaims.

203.    There exists an actual case or controversy between Meraki and MPS concerning the alleged infringement of the claims of the '104 Patent by virtue of MPS's Third Amended Complaint and Meraki's Answers and Defenses thereto. In its Third Amended Complaint, MPS alleged that Meraki's Accused Products infringe one or more claims of the '104 Patent under 35 U.S.C. § 271(a). ECF 96 at ¶ 113. In its Final Infringement Contentions dated October 4, 2021, MPS asserted that Meraki infringes claims 1-5, 8-12, and 16 of the '104 Patent.

204.    Meraki has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '104 Patent. For example, Meraki's Accused Products do not include at least the limitation "secondary control circuit detects a slew rate of the voltage across the synchronous rectifier, and maintains the synchronous rectifier being off when

the slew rate of the voltage across the synchronous rectifier is lower than a slew rate threshold," as required by asserted claims 1 and 2 of the '104 Patent.

205. Also, Meraki's Accused Products do not include at least the limitations "a first comparator . . . to receive a voltage across the synchronous rectifier, and . . . to provide a first comparison signal based on a comparison result of the voltage across the synchronous rectifier with the first threshold; a second comparator . . . to receive the voltage across the synchronous rectifier, . . . and . . . to provide a second comparison signal based on a comparison result of the voltage across the synchronous rectifier with the second threshold; a pulse circuit . . . to provide a pulse signal based on the first comparison signal, wherein when the first comparison signal flips from a second voltage level to a first voltage level, the pulse signal has a pulse maintaining a preset time period," as required by asserted claims 3-5 and 8-10 and similarly required by asserted claims 1 and 2 of the '104 Patent.

206. In addition, Meraki's Accused Products do not include at least the limitations "detecting a slew rate of a voltage across the synchronous rectifier; and keeping the synchronous rectifier being off when the slew rate of the voltage across the synchronous rectifier is lower than a slew rate threshold," as required by asserted claims 11, 12, and 16 of the '104 Patent.

207. Meraki therefore seeks a declaration from this Court that Meraki does not infringe any asserted claim of the '104 Patent.

## FOURTH COUNTERCLAIM

### (Declaratory Judgment of Invalidity of the Claims of the '104 Patent)

208. Meraki re-alleges and incorporates by reference the allegations in Paragraphs 1-22 of its Counterclaims.

209.    There exists an actual case or controversy between Meraki and MPS concerning the alleged infringement of the claims of the '104 Patent by virtue of MPS's Third Amended Complaint and Meraki's Answers and Defenses thereto.

210.    One or more claims of the '104 Patent are invalid for failure to meet one or more of the requirements for patentability set forth in Title 35 of the United States Code, including, but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

211.    For example, and without limitation, one or more claims of the '104 Patent are invalid under each section of 35 U.S.C. §§ 102 and/or 103 based on prior art that was known or used in the United States, and that the patent was invented by another. For instance, U.S. Patent No. 8,416,587 to Chen ("Chen 587"), U.S. Patent No. 9,509,224 to Yang et al. ("Yang 224"), U.S. Publication No. 2011/0110122 to Chen et al. ("Chen 122"), U.S. Publication No. 2010/0027298 to Cohen ("Cohen"), U.S. Publication No. 20170353099 to Yang et al. ("Yang 099"), and Integrated Chip FAN6240 ("FAN6240"), individually or in combination or in view of other prior art, anticipates and/or renders obvious asserted claims 1-5, 8-12, and 16 of the '104 Patent under AIA 35 U.S.C. § 102 and § 103.

212.    Meraki therefore seeks a declaration from this Court that one or more of the claims of the '104 Patent are invalid.

**PRAYER FOR RELIEF**

WHEREFORE, Meraki prays that the Court enter judgment in its favor and against MPS as follows:

A.  Declaring that the claims of the '790 Patent have not been and are not being infringed by Meraki's products;

B.  Declaring that the claims of the '104 Patent have not been and are not being infringed by Meraki's products;

C.  Declaring that the claims of the '790 Patent are invalid;

D.  Declaring that the claims of the '104 Patent are invalid;

E.  Denying all relief that MPS seeks in its Third Amended Complaint;

F.  Awarding Meraki its expenses and costs in accordance with Rule 54(d) of the Federal Rules of Civil Procedure;

G.  Finding this case to be exceptional under 35 U.S.C. § 285 and awarding Meraki its costs and attorneys' fees; and

H.  Awarding Meraki any other relief that the Court deems just and proper.

Date:  December 13, 2021

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Winstol D. Carter*
Winstol D. Carter, Jr.
Texas Bar No. 03932950
*winn.carter@morganlewis.com*
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5006
T. 713.890.5000
F. 713.890.5001

Seth M. Gerber (*pro hac vice admitted*)
*seth.gerber@morganlewis.com*
2049 Century Park East, Suite 700
Los Angeles, CA 90067-3109
T. 310.907.1000
F. 310.907.1001

Andrew J. Gray IV (*pro hac vice admitted*)
*andrew.gray@morganlewis.com*
Shaobin Zhu (*pro hac vice admitted*)
*shaobin.zhu@morganlewis.com*
1400 Page Mill Road
Palo Alto, CA 94304
T. 650.843.4000
F. 650.843.4001

*Attorneys for Defendant Meraki
Integrated Circuit (Shenzhen)
Technology, Ltd.*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned counsel hereby certifies that on December 13, 2021, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system per Local Rule CV-5, which will send a notification of electric filing to all counsel of record who have appeared in this case.

 */s/ Winstol D. Carter*
Winstol D. Carter, Jr.